



FILED

OCT 3 1 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re:

WILLIAM V. PRIOR,                    )    Case No. 13-30690-B-11
                Debtor.              )    Chapter 11
_____    )
                                     )
WILLIAM V. PRIOR,                    )
                Plaintiff.           )
                                     )    Adv. Pro. No. 13-2288-B
vs.                                  )
                                     )    DCN JWK-3
TRI COUNTIES BANK, et al.,           )
                                     )    **MEMORANDUM DECISION**
                Defendants.          )
                                     )
_____    )
                                     )
FEDERAL DEPOSIT INSURANCE            )
CORPORATION,                         )
                                     )
   Plaintiff-in-Intervention,        )
                                     )
vs.                                  )
                                     )
WILLIAM V. PRIOR,                    )
                                     )
   Defendant-in-Intervention.        )
_____    )


    This matter was reopened for supplemental briefing by order
entered August 20, 2014, and deemed resubmitted on September 6,
2014.  The court now issues the following decision on the merits
of the motion.

    For the reasons set forth herein, the plaintiff debtor's
opposition is overruled.  The motion is granted.  All claims for

relief in the plaintiff debtor's complaint are dismissed without
leave to amend based on the court's lack of subject matter
jurisdiction under Fed. R. Civ. P. 12(b)(1).

## I. BACKGROUND

Debtor William Prior and his wife, Lynair Prior, acquired
real property located at 750, 760, 770 and 780 Lincoln Way,
Auburn, California ("Property 1").  On or about December 1, 2005,
the Priors were parties to a lease with Citizens Bank of Nevada
County ("Citizens Bank"), pursuant to which Citizens Bank had
agreed to lease portions of Property 1 for use as a bank branch.

In or about January 2006, the debtor and Citizens entered
into the following agreements:

1.) The debtor entered into a contract to purchase
real property located at 905 Lincoln Way, Auburn,
California ("Property 2").

2.) The debtor entered into a loan transaction with
Citizens, pursuant to which the debtor borrowed
$1,000,000.00 ("Loan 1").  Loan 1 was secured by a deed
of trust on Property 1.  The debtor used a portion of
the proceeds from Loan 1 as a down payment toward
purchase of Property 2.  Copies of the promissory note
and Deed of Trust evidencing Loan 1 are attached to the

-2-

proof of claim filed by Tri Counties Bank in the debtor's parent bankruptcy case and are filed as exhibits to TCB's motion for summary judgment.  The deed of trust on Property 1 provides, inter alia:

> Amendments.  This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust.  No alteration or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

The deed of trust further defines "Related Documents" as follows:

> Related Documents.  The words "Related Documents" mean all promissory notes, credit agreement, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deed, collateral mortgages, and all other instruments, agreements or documents, whether new or hereafter existing, executed in connection

-3-

with the Indebtedness.

3.)   The debtor entered into another loan transaction with Citizens, pursuant to which the debtor borrowed $1,000,000.00 ("Loan 2," and, collectively with Loan 1, the "Loans").  Loan 2 was secured by a deed of trust on Property 2.  The debtor used the loan proceeds from Loan 2 to complete the purchase of Property 2.  Copies of the promissory note and Deed of Trust evidencing Loan 2 are attached to the proof of claim filed by Tri Counties Bank in the debtor's parent bankruptcy case and are filed as exhibits to TCB's motion for summary judgment.  The deed of trust on Property 2 provides, inter alia:

> Amendments.  This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust.  No alteration or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

The deed of trust further defines "Related Documents"

-4-

as follows:

    Related Documents.  The words "Related
    Documents" mean all promissory notes, credit
    agreement, loan agreements, environmental
    agreements, security agreements, mortgages,
    deeds of trust, security deed, collateral
    mortgages, and all other instruments,
    agreements or documents, whether new or
    hereafter existing, executed in connection
    with the Indebtedness.

4.)  The debtor and Citizens entered into an agreement
to terminate the lease of Property 1 and entered into a
new lease agreement (the "Lease"), pursuant to which
Citizens agreed to lease Property 2 through April 30,
2011.  A copy of the Lease is attached to the
complaint.  Paragraph 21.4 of the Lease states the
following:

    21.4 Entire Agreement.  This Lease
    constitutes the entire agreement between
    Landlord and Tenant relative to the Premises
    and supercedes any prior agreements,
    brochures or representations, whether written
    or oral.  This lease may be altered, amended

or revoked only in writing signed by both Landlord and Tenant.  This Lease shall not be effective or binding in any way until fully executed by both parties.

Neither of the deeds of trust related to Loan 1 or Loan 2 specifically references the Lease.  The Lease does not specifically reference Loan 1 or Loan 2 or any document related thereto.

The Lease expired by its own terms on or about April 30, 2011.  On or about May 23, 2011, the debtor and Citizens entered into a forbearance agreement (the "Forbearance Agreement"), pursuant to which Citizens renewed the lease of Property 2 for five years.  Citizens also agreed to pay the debtor $24,550.27 (the "Tax Payment") for reimbursement of certain property tax liabilities incurred during the term of the Lease.  Citizens also agreed to forbear in the exercise of certain of its rights and remedies for alleged defaults under its various loan agreements with the the debtor.

Citizens failed in September 2011 and was taken over by the Federal Deposit Insurance Corporation, as receiver (the "FDIC-R").  Following Citizens' failure, the FDIC-R entered into an agreement with defendant Tri Counties Bank ("TCB"), pursuant to which the FDIC-R transferred the rights of Citizens under Loan 1 and Loan 2 to TCB.

Prior to Citizens' failure, it had not paid the Tax Payment

-6-

required by the Forbearance Agreement to the debtor.  The debtor
filed a timely proof of claim with the FDIC-R for the amount of
the Tax Payment, and on or about February 16, 2012, was issued a
receivership certificate, representing an acknowledged claim
against the receivership estate.  The debtor has not received any
funds on account of his allowed claim based on the receivership
certificate from the FDIC-R.

Thereafter, on or about March 14, 2012, the FDIC-R
repudiated the lease of Property 2.  On or about June 15, 2012,
the debtor filed a proof of claim with the FDIC-R in the amount
of $461,096.44 for the balance due on Citizens' lease of Property
2 from the debtor (the "Rent Claim").  On July 25, 2012, the
FDIC-R sent the debtor a notice (the "Notice") informing him that
the Rent Claim was disallowed, based on the FDIC-R's repudiation
of the lease.  The Notice also stated that if the debtor did not
agree with the disallowance, he had the right to file a lawsuit
in the United States District Court for the District in which
Citizens was located within 60 days from the date of the Notice.
The Notice further stated that if the debtor did not file a
lawsuit before the end of the 60-day period, the disallowance
would be final, the debtor's claim would be forever barred and he
would have no further rights or remedies with respect to the Rent
Claim.

On April 19, 2013, TCB caused defendant Placer Foreclosure,
Inc. ("Placer Foreclosuire") to record a Notice of Default and
Election to Sell Under Deed of Trust with respect to Loan 1 and

-7-

Property 1, asserting that Loan 1 was in default in the amount of $24,360.93 as of April 19, 2013.  Also on April 19, 2013, TCB caused Placer Foreclosure to file a Notice of Default and Election to Sell Under Deed of Trust with respect to Loan 2 and Property 2, asserting that Loan 2 was in default in the amount of $24,350.16 as of April 19, 2013.

On July 8, 2013, 348 days after the date of the Notice, the debtor filed a lawsuit in Placer County Superior Court against TCB and Placer Foreclosure.  The lawsuit sought the following relief:

1.)  Judgment declaring that the debtor was not in default under the promissory notes or deeds of trust relating to Loan 1 and Loan 2.

2.)  Judgment declaring that the notices of default recorded against Property 1 and Property 2 failed to comply with applicable law.

3.)  Judgment declaring that The debtor is entitled to set off amounts owing to the debtor under the Lease against amounts due under Loan 1 and Loan 2 and that Loan 1 and Loan 2 are satisfied in full.

4.)  Injunctive relief prohibiting the defendants from conducting nonjudicial foreclosure proceedings with

-8-

respect to the deeds of trust securing Loan 1 and Loan 2.

The FDIC-R filed a complaint in intervention in the Placer County lawsuit on or about August 12, 2013, seeking a judicial determination that the Loans were not repudiated by the FDIC-R and are fully enforceable and that the debtor may not set off amounts allegedly owed to him under the Lease and the Forbearance Agreement against amounts he owes under the Loans.
On August 14, 2013, The debtor commenced the present chapter 11 bankruptcy case.  On August 27, 2013, the debtor filed a notice of removal which removed the Placer County lawsuit to this court. The FDIC-R filed the instant motion to dismiss on December 27, 2013.

## II. ANALYSIS

*A.   Summary of Motion and Arguments*

The FDIC-R seeks dismissal of the adversary proceeding with prejudice pursuant to Fed. R. Civ. P. 12(b)(1), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012.  Rule 12(b)(1) provides for dismissal of adversary proceedings by motion on the ground of lack of subject matter jurisdiction.
The FDIC-R argues in the motion that as a result of the failure and receivership of Citizens, the debtor was required to

-9-

file any and all administrative claims relating to Citizens with the FDIC-R.  Although the debtor did file administrative claims with the FDIC-R, one of which was allowed and the other disallowed, he did not seek judicial review of the disallowance of the Rent Claim within 60 days following its disallowance.  The FDIC-R argues that the debtor is seeking remedies outside of and contrary to administrative proceedings created by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, codified at 12 U.S.C. § 1821 ("FIRREA"), and that he is barred from doing so by his failure to comply with the 60-day period mandated by 12 U.S.C. § 1821(d)(6).  The FDIC-R argues that his failure to do so imposes a jurisdictional bar pursuant to 12 U.S.C. § 1821(d)(13)(D) that requires dismissal of this action.

The debtor argues in opposition to the motion that the FDIC-R is attempting to deprive him of a right of setoff against TCB, which he characterizes as a defense or affirmative defense.  He argues that he is asserting no claim against TCB, the FDIC-R or Placer Foreclosure and that he is instead merely asserting his defense to TCB's claim against him through the adversary proceeding.  He argues that the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D) does not apply because the FDIC's claims adjudication process does not apply to setoff defenses or other affirmative defenses.

*B.   Issues to Be Decided*

- 10 -

Due to the manner in which the debtor filed claims with the FDIC-R and the manner in which they were addressed by the FDIC, the court identifies the following separate issues to be resolved on this motion:

1.)  Whether the bankruptcy court has jurisdiction to hear a claim for setoff asserted by a debtor in an adversary proceeding associated with a bankruptcy case.

2.)  Whether the debtor can assert a setoff against TCB's claim in the bankruptcy case in the amount of the Tax Payment, which Tax Payment the FDIC-R allowed as a claim against the receivership estate of Citizens and for which the FDIC-R issued the debtor a receivership certificate in the amount of the Tax Payment.

3.)  Whether the debtor can assert a setoff against TCB's claim in the bankruptcy case in the amount of the Rent Claim, which Rent Claim the debtor filed with the receivership estate of Citizens and which Rent Claim the FDIC-R disallowed, and for which the debtor did not seek judicial review pursuant to 12 U.S.C. § 1821(d)(6) within the time allowed by that statute.

The court will explain in the following sections that while the court has subject matter jurisdiction under bankruptcy law to

1  hear a claim for setoff asserted by the debtor against TCB, in
2  doing so, the court cannot ignore the requirements of FIRREA,
3  which imposes a jurisdictional bar for all courts against the
4  assertion of certain types of claims which are subject to
5  FIRREA's claims review and distribution procedures, as well as a
6  bar for claims which are not administratively exhausted.   The
7  debtor's asserted setoffs are in substance claims of the type
8  which are subject to FIRREA's requirements, and the debtor cannot
9  assert them against TCB.

10
11  C.   Rule 12(b)(1)

12
13       Fed. R. Civ. P. 12(b)(1) requires dismissal of an action if
14  the court lacks subject matter jurisdiction over the action:

15
16       Pursuant to Rule 12(b)(1), a district court must
17       dismiss an action if it lacks jurisdiction over the
18       subject matter of the suit. See Fed.R.Civ.P. 12(b)(1).
19       "Subject matter jurisdiction can never be forfeited or
20       waived and federal courts have a continuing independent
21       obligation to determine whether subject-matter
22       jurisdiction exists." Leeson v. Transamerica Disability
23       Income Plan, 671 F.3d 969, 976 (9th Cir.2012) (internal
24       quotation marks and citation omitted). A party
25       challenging the court's subject matter jurisdiction
26       under Rule 12(b)(1) may bring a facial challenge or a
27
28                          - 12 -

factual challenge. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir.2000). A facial attack is one where "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir.2004). In evaluating such a challenge, the court accepts the factual allegations in the complaint as true. See Miranda v. Reno, 238 F.3d 1156, 1157 n.1 (9th Cir.2001). In contrast, where the defendant challenges the factual basis underlying the allegations, the court need not accept the allegations as true and may instead make factual determinations. White, 227 F.3d at 1242. "In ruling on a challenge to subject matter jurisdiction, the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir.1983) (internal citation omitted). When making such a ruling, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir.2003) (citing White, 227 F.3d at 1242). The burden of proof on a Rule 12(b)(1) motion is on a party asserting jurisdiction. Sopcak v. Northern Mountain Helicopter Serv., 52 F.3d

817, 818 (9th Cir.1995).

Alatraqchi v. Uber Technologies, Inc., 2013 WL 4517756 at *3 (N.D. Cal. Aug. 22, 2013).

*D.   The Court Has Subject Matter Jurisdiction to Determine the Amount of TCB's Claim*

As to the first issue for resolution identified by the court, the court finds that as a general proposition it has subject matter jurisdiction to determine the amount of TCB's claim in the bankruptcy case.  Pursuant to 28 U.S.C. § 157(b)(1), "[b]ankruptcy judges may hear and determine all cases arising under title 11 or arising in or related to a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."  Claims that arise under Title 11 are those that involve a cause of action created or determined by a statutory provision of Title 11.  In re Harris Pine Mills, 44 F.3d 1431, 1435 (9th Cir. 1995), citing In re Wood, 825 F.2d 90, 96-97 (5th Cir. 1987).  Claims that arise in Title 11 are " 'administrative' matters that arise solely in bankruptcy cases . . . [They] are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy."  Wood, 825 F.2d at 97.  Such claims are deemed to be "core" proceeding.  In re Harris Pine Mills, 44 F.3d at 1435.

- 14 -

1    28 U.S.C. § 157((b)(2) sets forth a non-exclusive list of

2    specific core proceedings.  28 U.S.C. § 157(b)(2)(B) includes

3    "allowance or disallowance of claims against the estate or

4    exemptions from property of the estate, and estimation of claims

5    or interests for the purposes of confirming a plan under chapter

6    11, 12 or 13 of title 11" in the list of core proceedings.  The

7    fact that allowance or disallowance of a claim is listed as a

8    core proceeding under 28 U.S.C. § 157(b)(2) is not dispositive of

9    the inquiry, as while the statute may grant the court statutory

10   authority, the court may nevertheless lack constitutional

11   authority under Article III to decide the matter.  <u>Stern v.</u>

12   <u>Marshall</u>, 564 U.S. __, 131 S.Ct. 2594 (2011).

13       Putting aside momentarily the question of the effect 12

14   U.S.C. 1821(d)(13)(D), in this case the general question of

15   whether the bankruptcy court has jurisdiction to determine the

16   amount of TCB's claim in this bankruptcy case is easily resolved.

17   There is an express statutory grant of authority to the

18   bankruptcy court determine the amount of a filed claim in 11

19   U.S.C. § 502(b).  Such proceedings "arise under" the Bankruptcy

20   Code.  Adjudicating a counterclaim by the estate against a

21   creditor that has filed a claim in the bankruptcy case, which

22   counterclaim must necessarily be resolved in allowing or

23   disallowing the claim does not offend Article III of the United

24   States Constitution.  <u>Stern</u>, 131 S.Ct. at 2620.  For

25   jurisdictional purposes, the court treats a setoff like a

26   counterclaim.  Because the debtor's claimed setoff must

27

28                              - 15 -

necessarily be adjudicated in the process of allowing or
disallowing TCB's claim, doing so does not create any
constitutional limitation on the court's jurisdiction.
Therefore, the court has jurisdiction under the Bankruptcy Code
to hear and determine an adversary proceeding which seeks to
determine the amount of TCB's claim filed in the bankruptcy case.
To the extent that the FDIC-R argues that the court does not have
jurisdiction to determine the amount of TCB's claim, other than
by application of 12 U.S.C. 1821(d)(13)(D), its argument is not
persuasive.  The court notes that at the present time the
complaint, which is removed from state court, does not allege a
specific claim for relief for determination of TCB's claim, but
notes that in a separate motion the debtor has requested leave to
amend the complaint to include such a claim (Dkt. 184).

The foregoing assumes that the debtor may assert a setoff in
the bankruptcy case based on the Tax Payment and the Rent Claim,
without considering any restriction imposed by FIRREA.   In
exercising its jurisdiction to determine the amount of TCB's
claim filed in the bankruptcy case the court must consider the
effect of the requirements of FIRREA.  For the reasons set forth
below, FIRREA prevents the debtor from asserting a setoff claim
against TCB.

*E.   The Debtor's Asserted Setoff Based on the Rent Claim and the*
*Tax Payment Are Claims Susceptible of Resolution Through the*
*FIRREA Claims Process*

Having determined that the court has jurisdiction, in a general sense, to determine the amount of TCB's claim in the bankruptcy case, the court next considers whether the debtor can assert a setoff against TCB's claim in the amount of the Rent Claim and/or the Tax Payment.  The first step in the court's analysis is to determine whether the debtor's asserted setoffs are claims which are susceptible of resolution through the FIRREA claims process and therefore subject to administrative exhaustion under FIRREA.

### 1.  Setoff

"The Bankruptcy Code does not create a right to setoff; it merely preserves the right already given in a nonbankruptcy context. . . . If a party is generally entitled to setoff in the nonbankruptcy context, it is entitled to one under the Bankruptcy Code."  In re HAL, Inc., 122 F.3d 851, 852-53 (9th Cir. 1997)(citing Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995)).

Under California law, the right of setoff is codified under Cal. Civ. Proc. Code § 431.70.  That section allows a setoff in an action between persons where "cross-demands for money have existed" between those persons "at any point in time when neither demand was barred by the statute of limitations."  Cal. Civ Proc. Code § 431.70.  The statute further provides that "[n]either person can be deprived of the benefits of this section by the

-17-

assignment or death of the other." <u>Id.</u>

Under California law, a key feature of the right of setoff is that it can only be applied between two parties who owed each other mutual debts or credits at a time when neither was time-barred:

> The English chancery courts allowed setoff to be raised as a defense as early as the 17th century. ( <u>Prudential Reinsurance Co. v. Superior Court</u> (1992) 3 Cal.4th 1118, 1124, 14 Cal.Rptr.2d 749, 842 P.2d 48; 3 Story, <u>Commentaries on Equity Jurisprudence</u> (14th ed. 1918) § 1867, pp. 468-469; <u>see also</u> Tigar, <u>Automatic Extinction of Cross-Demands: Compensation from Rome to California</u> (1965) 53 Cal.L.Rev. 224 [tracing the history of setoff to the Roman law concept of compensation].) It was founded on the equitable principle that "either party to a transaction involving mutual debts and credits can strike a balance, holding himself owing or entitled only to the net difference, ..." (<u>Kruger v. Wells Fargo Bank</u> (1974) 11 Cal.3d 352, 362, 113 Cal.Rptr. 449, 521 P.2d 441.) Setoff, as it applies to this case, is now codified as section 431.70 of the Code of Civil Procedure, which provides in pertinent part: "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter

- 18 -

commenced by one such person, the other person may

assert in the answer the defense of payment in that the

two demands are compensated for so far as they equal

each other, ..."

Granberry v. Islay Inv., 9. Cal. 4th 738, 743-44 (1995).

2.    FIRREA

The Financial Institutions Reform, Recovery and Enforcement
Act of 1989 ("FIRREA") is codified at 12 U.S.C. § 1821.    12
U.S.C. § 1821(c)(1) allows the FDIC to act as conservator or
receiver for any federally insured depository institution, based
on the grounds set forth in 12 U.S.C. § 1821(c)(5).    FIRREA
"provides detailed procedures to allow the FDIC to consider
certain claims against the receivership estate."    Benson v.
JPMorgan Chase Bank, N.A., 673 F.3d 1207, 1211 (9th Cir. 2012).

12 U.S.C. § 1821(d)(2)(A) authorizes the FDIC to succeed to
all rights, titles, powers and privileges of the insured
depository institution, and of any stockholder, member,
accountholder, depositor, officer or director of the institution
with respect to the institution and the assets of the
institution.    12 U.S.C. § 1821(d)(2)(B) allows the FDIC to
operate the institution.    12 U.S.C. § 1821(d)(2)(G) allows the
FDIC to merge the failed institution with another insured
depository institution or to "transfer any asset or liability of

the institution in default . . . without any approval,
assignment, or consent with respect to such transfer." The Ninth
Circuit Court of Appeals recognizes the FDIC's authority to limit
liabilities assumed by a purchasing bank through a Purchase and
Assumption Agreement. W. Park Assocs. v. Butterfield Sav. & Loan
Ass'n, 60 F.3d 1452, 1458 (9th Cir. 1995).

The FDIC's authorization to sell assets of a failed
institution and to limit the liability of the purchaser of the
assets with respect to claims against the failed institution is
central to one of FIRREA's core purposes: to efficiently effect
the sale of a failed institutions assets and "expeditiously
resolve claims against a failed institution without any recourse
to litigation." Kosicki v. Nationstar Mortgage, LLC, 947
F.Supp.2d 546, 553 (W.D. Pa. 2013).

FIRREA also gives the FDIC authority to determine claims
against a failed depository institution:

Section 1821(d)(3)(A) of FIRREA provides the FDIC,
acting in its capacity as receiver, with the authority
to determine claims against a failed depository
institution. If a claimant submits a timely claim to
the FDIC, it must determine within 180 days whether to
allow or disallow the claim.  If the FDIC fails to
determine the claim or disallows the claim, then, under
§ 1821(d)(6)(A), the claimant has 60 days to request
administrative review or file or continue suit on such

claim in the district court.  No court has jurisdiction over the claim until the exhaustion of this administrative process.

Intercontinental Travel Marketing, Inc. v. FDIC, 45 F.3d 1278, 1282 (9th Cir. 1994)(footnotes omitted).  Allowed claims are subject to a distribution priority scheme set forth under 12 U.S.C. § 1821(d)(11).  FIRREA's jurisdictional bar, mentioned by the Intercontinental Travel Marketing court, is found in 12 U.S.C. § 1821(d)(13)(D) and provides:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).

To further aid in the expeditious resolution of claims

against a failed institution, 12 U.S.C. § 1821(e)(1) gives the FDIC the authority to disaffirm or repudiate contracts or leases to which failed institution is a party, the performance of which would be burdensome and the disaffirmance or repudiation of which the FDIC determines will promote the orderly administration of the failed institution's affairs.  12 U.S.C. § 1821(e)(3) provides that claims for damages for repudiation are limited to actual direct compensatory damages determined as of the date of the appointment of the receiver.  For leases under which the failed institution is the lessee, 12 U.S.C. § 1821(e)(4) provides that if the receiver repudiates the lease, the receiver is only liable for contractual rent accruing before the later of the date the notice of repudiation is mailed, or the repudiation becomes effective, and the lessor will have no claim for damages under any acceleration clause or other penalty provision in the lease, but will have a claim for unpaid rent due as of the date of the appointment of the receiver.

Claims for contract damages arising from disaffirmation or repudiation of a contract or lease pursuant to 12 U.S.C. § 1821(e) are subject to the claims process of 12 U.S.C. § 1821(d) and to the distribution priority scheme set forth in 12 U.S.C. § 1821(d)(11).  Battista v. FDIC, 195 F.3d 1113, 1121 (9th Cir. 1999).

With respect to the types of claims which are subject to administrative exhaustion under FIRREA, the Ninth Circuit has held:

- 22 -

FIRREA's exhaustion requirement [found in 12 U.S.C. §
1821(d)(3)(A)] applies to any claim or action
respecting the assets of a failed institution for which
the FDIC is receiver.  We have recognized some
exceptions, for special situations.  However, apart
from claims made in connection with bankruptcy
proceedings or arising out of a breach of contract
fully performed by the aggrieved party but not
repudiated by the receiver, all claims or actions must
be submitted for administrative resolution.
Accordingly, debtors as well as creditors who assert a
qualifying claim or action must exhaust.
Post-receivership claims arising out of acts by the
receiver as well as by the failed institution are
likewise subject to exhaustion.

McCarthy v. FDIC, 348 F.3d 1075, 1081 (9th Cir. 2003).

More recently, the Ninth Circuit in Rundgren v. Washington
Mut. Bank, FA, 760 F.3d 1056 (9th Cir. 2014) reiterated that all
claims "susceptible of resolution through the claims procedure"
are subject to FIRREA's exhaustion requirement:

We have held that FIRREA "bars judicial review of any
non-exhausted claim, monetary or nonmonetary, which is
'susceptible of resolution through the claims

procedure.' " <u>Henderson</u>, 986 F.2d at 321 (quoting <u>Rosa</u>
<u>v. Resolution Trust Corp.</u>, 938 F.2d 383, 394 (3d
Cir.1991)); <u>see also</u> <u>Tri-State Hotels, Inc. v. FDIC</u>, 79
F.3d 707, 714 (8th Cir.1996) (holding that §
1821(d)(13)(D) applies to declaratory judgment
actions); <u>Nat'l Union Fire Ins. Co. v. City Sav.,</u>
<u>F.S.B.</u>, 28 F.3d 376, 385 (3d Cir.1994) (same).

<u>Rundgren</u>, 760 F.3d at 1061-62. "A claimant cannot circumvent the
exhaustion requirement by suing the purchasing bank based on the
conduct of the failed institution.  'Where a claim is
functionally, albeit not formally, against a depository
institution for which the FDIC is receiver, it is a 'claim'
within the meaning of FIRREA's administrative claims process.' "
<u>Rundgren</u>, 760 F.3d at 1064 (quoting <u>Benson v. JPMorgan Chase</u>
<u>Bank, N.A.</u>, 673 F.3d 1207, 1214 (9th Cir. 2012)).

> *3.  The Debtor's Asserted Setoffs Based on the Rent
> Claim and the Tax Payment Are Based On Claims
> Susceptible of Resolution Under FIRREA's Claims
> Procedure*

The debtor goes to great lengths in his opposition to the
motion to emphasize that the claims for relief alleged in his
complaint are not claims that were susceptible of resolution
through the FIRREA claims procedure, but are instead affirmative

defenses against TCB's claim in his bankruptcy case.    This
argument is unavailing.

As the Ninth Circuit in <u>Rundgren</u> noted, FIRREA does not
define the term "claim" for the purposes of 12 U.S.C. §
1821(d)(13)(D).    The Ninth Circuit in <u>Rundgren</u> resorted to the
ordinary meaning of the term as  "a cause of action or the
aggregate of facts that gives rise to a right to payment or an
equitable remedy.  <u>Rundgren</u>, 760 F.3d at 1061 (citing <u>Black's Law</u>
<u>Dictionary</u> 281-82 (9th ed.2009); <u>Black's Law Dictionary</u> 247 (6th
ed.1991)).

Under that general definition the debtor's complaint clearly
asserts claims for monetary and non-monetary relief against TCB,
based on alleged defaults under the Lease and Forbearance
Agreement by Citizens and repudiation of the Lease by the FDIC.
The claims are also susceptible of resolution through the claims
process.    The claims in the complaint are <u>formally</u> alleged
against TCB, but <u>functionally</u> they are claims against Citizens
and/or the FDIC, as they are claims relating to acts or omissions
by Citizens and/or the FDIC.  Even the claims relating to alleged
improper foreclosure by TCB are rooted in the acts of Citizens,
as the debtor alleges that TCB cannot foreclose based on
Citizens' failure to honor the terms of the Lease and the
Forbearance Agreement.

Further evidence supporting the court's finding that the
debtor's claims are susceptible of resolution through the FIRREA
claims process is found in the actions of the debtor himself.

- 25 -

There is no dispute that the debtor filed a proof of claim against the receivership estate for the Tax Payment, based on Citizens' default under the Forbearance Agreement.  There is also no dispute that he also filed a proof of claim against the receivership estate of Citizens based on remaining amounts due under the lease of Property 2 following the repudiation of the lease by the FDIC-R.  As discussed in part II(E), _supra_, claims for contract damages arising from disaffirmation or repudiation of a contract or lease pursuant to 12 U.S.C. § 1821(e) are subject to the claims process of 12 U.S.C. § 1821(d) and to the distribution priority scheme set forth in 12 U.S.C. § 1821(d)(11).  _Battista v. FDIC_, 195 F.3d 1113, 1121 (9th Cir. 1999).  Although the debtor attempts to characterize the Rent Claim as a claim for payment of "future rent," based on the FDIC-R's communication to him that informed him that "future rent" was not the responsibility of the FDIC-R, he had no such claim for future rent because there was no longer any agreement for payment of rent, as the FDIC-R repudiated the Lease.  What the debtor had following the repudiation of the Lease was a claim for damages based on the repudiation.  That is a claim that is susceptible to FIRREA's claims review and distribution process.  It was therefore also subject to FIRREA's requirements regarding administrative exhaustion.

     The debtor's arguments against this straightforward application of the basic principles stated in McCarthy and Rundgren are unavailing.  First, the debtor's reliance on In re

1    <u>Parker N. Am. Corp.</u>, 24 F.3d 1145 (9th Cir. 1994), one of the

2    limited "exceptions" recognized by the Ninth Circuit in <u>McCarthy</u>

3    based on "special situations" is not persuasive.  The debtor

4    asserts that <u>Parker</u> stands for the proposition that anything

5    which may be described as an affirmative defense is not subject

6    to FIRREA's claims process.  The court does not take such an

7    expansive view.  In <u>Parker</u>, Parker North American Corporation

8    ("PNA") borrowed $10 million dollars from Sooner Federal Savings

9    and Loan Association ("Old Sooner").  After paying down $4.65

10   million of the loan, the PNA filed a chapter 11 case and, as

11   debtor in possession, sued Old Sooner in a preference action to

12   recover the $4.65 million.  After filing a proof of claim the

13   bankruptcy case Old Sooner failed and went into receivership

14   under the Office of Thrift Supervision.  The OTS then transferred

15   some assets of Old Sooner, including Old Sooner's claims against

16   PNA but none of the liabilities represented by the preference

17   action, to Sooner Federal Savings Association ("New Sooner")

18   under the control of the Resolution Trust Corporation (the

19   "RTC").  PNA did not receive notice of the receivership and did

20   not file a claim against the receivership estate of Old Sooner.

21   PNA did continue to pursue its preference action in the

22   bankruptcy court, and the RTC participated in the chapter 11

23   case.  The RTC filed a summary judgment motion in the preference

24   action asserting that PNA's failure to file a claim against Old

25   Sooner's estate was an affirmative defense to the preference

26   action.  The bankruptcy court granted the motion, but the

27

28                              - 27 -

district court reversed the bankruptcy court's decision.

On appeal, the Ninth Circuit considered the issue of whether "FIRREA precludes bankruptcy court jurisdiction over a preference action against an institution for which the RTC, in its capacity as a receiver, has filed a proof of claim arising from the same transaction as the alleged preference." Parker, 24 F.3d at 1149.

The Ninth Circuit affirmed the district court's reversal of the bankruptcy court and held that "FIRREA is inapplicable to claims against the RTC that arise only incidentally to the bankruptcy court's determination of the RTC's claim against the debtor." Parker, 24 F.3d at 1156. In construing PNA's preference claim as one arising incidentally to the bankruptcy court's determination of the RTC's claim, the Parker court stated that "[i]n this case, we think PNA's preference action is in substance an affirmative defense." Id. at 1155. Central to the Parker court's reasoning was the fact that PNA was not a creditor of the RTC, but a debtor of the RTC, and that the FIRREA administrative claims procedure was only applicable to creditors of the failed institution. Id. at 1153. The decision that PNA's preference action was in substance an affirmative defense that could be decided in determining the amount of the RTC's claim was consistent with the Supreme Court's later holding in Stern v. Marshall, as the preference claim was one that "stem[med] from the bankruptcy itself," and "would necessarily be resolved in the claims allowance process." Stern, 131 S.Ct. at 2618.

The court finds Parker inapplicable here for four reasons.

- 28 -

First, unlike PNA, the debtor here is not defending against the efforts of the FDIC-R to collect a debt; he is trying to establish his claim against Citizens for the purpose of trying to assert that claim against TCB.  Repetition of his assertion that he is not trying to enforce a claim against TCB but is instead merely raising a defense does not effect a substantive change in the nature of his claim.  Also unlike PNA, because he is not defending against a claim by the FDIC-R the debtor is not and was not ever put into the "absurd" position imagined by the <u>Parker</u> court of having to present to the RTC "all potential affirmative defenses that might be asserted in response to unknown and unasserted claims or actions by the RTC." <u>Id.</u> at 1155 (citing <u>RTC v. Midwest Fed. Sav. Bank of Minot</u>, 4 F.3d 1490, 1496-97 (9th Cir. 1994).  In fact, it is apparent that the debtor was completely cognizant of his <u>claim</u> against Citizens because he timely filed two claims against the receivership estate, one of which was allowed and paid with a receiver's certificate.  That he has yet to receive payment based on the receiver's certificate or that he might obtain a greater benefit from asserting a setoff against TCB rather than receive a distribution from the receivership estate does not justify treating his claim as the type of affirmative defense recognized by <u>Parker</u>.

Second, since <u>Parker</u> the Ninth Circuit in <u>McCarthy</u> undercut the central tenet of <u>Parker</u>'s analysis when it held that the FIRREA claims process applies equally to debtors and creditors with qualifying claims.

1   Third, the debtor does not recognize that <u>his</u> alleged

2   affirmative defense of setoff in this case is based on a <u>demand</u>,

3   i.e. a <u>claim</u>, for money arising out of a right to payment under

4   the Forbearance Agreement and does not "arise only incidentally"

5   to this court's determination of TCB's claim.  As such the

6   debtor's claim was "susceptible of resolution through the claims

7   procedure."

8   Finally, as recognized by the <u>McCarthy</u> court, <u>Parker</u> is a

9   special situation that should be confined to its specific facts.

10  This case is not a case like <u>Parker</u> or <u>RTC v. Midwest Fed. Sav.</u>

11  <u>Bank</u>, where a debtor asserted an affirmative defense against the

12  RTC or the FDIC to a claim made by the RTC or the FDIC.

13  The court is also not persuaded by the debtor's reliance on

14  <u>Sharpe v. FDIC</u>, 126 F.3d 1147, 1157 (9th Cir. 1997), another

15  special case identified by the <u>McCarthy</u> court.  In <u>Sharpe</u>, the

16  plaintiffs and Pioneer Bank entered into a settlement agreement

17  pursuant to which the bank was to wire-transfer $510,000.00 to

18  the plaintiffs and the plaintiffs were to deliver a note and deed

19  of trust and a request for a reconveyance.  It was to be a

20  simultaneous exchange of funds for documents.  The plaintiffs

21  delivered the documents to the bank, and the bank gave the

22  plaintiffs two cashier's checks.  Shortly thereafter, before the

23  cashier's checks were cashed, the bank was seized by state

24  regulators and put into receivership, with the FDIC as receiver.

25  The FDIC took possession of the documents delivered by the

26  plaintiffs, but refused to honor the cashier's checks.  The FDIC

27

28                              - 30 -

instead asserted that the plaintiffs were required to participate in the FIRREA claims process and accept a dividend through its distribution scheme, and allowed a claim in favor of the plaintiffs.

The Ninth Circuit in Sharpe addressed the issue of whether the district court had jurisdiction to decide a claim by the plaintiffs against the FDIC for payment pursuant to the settlement agreement in light of the fact that they had been allowed a claim in the FIRREA claims process.  The Sharpe court held that the district court did have jurisdiction, under the particular circumstances of that case, because the FDIC, not the failed bank, materially breached the settlement agreement by refusing to honor the cashier's checks.  The post-receivership breach by the FDIC gave rise to a contract claim by the plaintiffs against the FDIC that was not subject to the administrative claims process.  The Sharpe court specifically pointed out that under FIRREA the FDIC did have the power to avoid liability by disaffirming or repudiating a contract, but that the procedures for doing so under 11 U.S.C. § 1821(e) were not followed.

The debtor's argument under Rinestone v. Enterprise Bank & Trust, 2012 WL 1681986 (D. Ariz. May 14, 2012) is also unavailing.  The debtor argues that his asserted setoffs are not barred by FIRREA's jurisdictional bar because they are asserted in the context of determining the extent of TCB's lien and the amount of its claim in the bankruptcy case and FIRREA does not

give the FDIC-R adjudicatory authority to determine those
matters.  However the debtor ignores the fact that the FDIC-R
does have authority under FIRREA to determine the monetary claims
which form the basis of the asserted setoffs.  Those claims, are
susceptible of resolution through the FIRREA claims process for
the reasons described above.  Furthermore, Rinestone is an
unpublished decision that is not binding on this court.

The court also does not agree with the debtor's argument,
based on Murphy v. FDIC, 38 F.3d 1490 (9th Cir. 1994), FDIC v.
Craft, 157 F.3d 697 (9th Cir. 1998) and FDIC v. Mademoiselle of
Cal., 379 F.2d 660 (9th Cir. 1967) that he may assert his right
of setoff directly against TCB and that FIRREA does not affect
mutuality between the debtor and TCB.  Mademoiselle was decided
long before FIRREA was enacted and does not take into account the
effect of FIRREA on a claimant's ability to seek further judicial
relief for his claims in light of FIRREA's administrative
exhaustion requirement.  Both Craft and Murphy are factually
distinguishable from this case.  Craft and Murphy addressed the
availability of a setoff right where the debtor of the failed
bank sought to exercise that right against the FDIC itself as it
stood in the shoes of the failed bank.  Neither Craft nor Murphy
addressed the issue of whether a debtor of a failed institution
with a mutual claim against the institution could assert that
claim against an entity that acquired the claim from the FDIC.
//
//

-32-

*F.    The Asserted Setoff Based on the Rent Claim Is*
*Jurisdictionally Barred by FIRREA Because the Debtor Did Not*
*Exhaust the Administrative Claims Process*

For the reasons stated in Part II(E) of this decision, the debtor's right to payment of the Rent Claim is a claim that was susceptible of resolution through the FIRREA claims process and subject to FIRREA's requirement of administrative exhaustion. Characterizing the Rent Claim as a setoff against Loan 1 and Loan 2 does not change the fact that the debtor's claims based on the Rent Claim are functionally claims related to the acts or omissions of Citizens and/or the FDIC-R as receiver for Citizens. The debtor did in fact submit a claim to the FDIC-R under the FIRREA claims process based on the Rent Claim, and the FDIC-R did not allow the claim.  The debtor did not seek timely judicial review in the federal district court of the FDIC's determination of the Rent Claim.  The debtor has "no further rights or remedies with respect to" the Rent Claim.  12 U.S.C. § 1832(d)(6)(B). This includes the right of setoff based on the Rent Claim which forms the basis of the declaratory and injunctive relief sought in the complaint.

*G.    The Asserted Setoff Based on the Tax Payment is*
*Jurisdictionally Barred Because It was Satisfied By the*
*Administrative Claims Process and Because the Debtor Did Not Seek*
*Judicial Review of the Determination*

-33-

1    For the reasons stated in Part II(E) of this decision, the
2  debtor's right to payment of the Tax Payment is a claim that was
3  susceptible of resolution through the FIRREA claims process and
4  subject to FIRREA's requirement of administrative exhaustion.
5  Characterizing the Tax Payment as a setoff against Loan 1 and
6  Loan 2 does not change the fact that the debtor's claims based on
7  the Tax Payment are functionally claims related to the acts or
8  omissions of Citizens and/or the FDIC-R as receiver for Citizens.
9  The debtor did in fact submit a claim to the FDIC-R under the
10  FIRREA claims process based on he Tax Payment, and the FDIC-R
11  determined that the claim would be allowed, and issued a
12  receiver's certificate.

13    The receiver's certificate, a copy of which was filed by the
14  debtor as Exhibit "H" to his opposition (Dkt. 140 at 56) stated
15  that the debtor's claim for the Tax Payment was allowed in the
16  amount of $24,550.27, and that as the FDIC-R liquidated the
17  assets of the receivership the debtor "may periodically receive
18  payments" on his claim through dividends and that any dividends
19  would be paid "in accordance with the priorities established by
20  applicable law."  The receiver's certificate, in determining the
21  allowance of the Tax Payment claim as well as the manner in which
22  the debtor would receive dividends, constitutes a determination
23  of the allowability of the debtor's claim to the Tax Payment, as
24  well as payment of and satisfaction of the Tax Payment.  See
25  Battista v. FDIC, 195 F.3d 1113, 1116 (9th Cir. 1999)("There is
26  no question that the FDIC may pay creditors with receiver's

27

28                                -34-

certificates instead of cash.")(emphasis added); <u>MPR Global, Inc.</u>
<u>v. FDIC</u>, 299 Fed.Appx. 620 (9th Cir. 2008)(FDIC allowed claim
based on a judgment and "paid that judgment in full with a
receiver's certificate, which federal law permits.").

The debtor cannot assert his right to the Tax Payment as a
setoff against Loan 1 and Loan 2 because the Tax Payment has
already been satisfied by the receiver's certificate and his
entitlement to receive funds is determined by FIRREA's priority
distribution scheme.  Allowing the debtor a dollar-for-dollar
setoff against Loan 1 and Loan 2 would allow the debtor to
circumvent FIRREA's priority distribution scheme and possibly
obtain a greater recovery than the pro rata distribution to which
and similarly situated creditors of Citizens are entitled.  <u>See</u>
<u>Battista</u>, 195 F.3d at 1116 ("To require the FDIC to pay certain
creditors in cash would allow those creditors to 'jump the line,'
recovering more than their pro rata share of the liquidated
assets, if the financial institution's debts exceed its
assets."); <u>Placida Professional Center, LLC, v. FDIC</u>, 512
Fed.Appx. 938, 951-52 (Allowing dollar-for-dollar setoff of claim
for repudiation damages would allow plaintiff to "jump the line"
in front of higher priority creditors and violate FIRREA's
distribution scheme.).

The debtor may not be satisfied with the payment of his
claim via a receiver's certificate because he has yet to receive
a dividend on the allowed Tax Payment claim from the FDIC.
However, if the debtor was not satisfied with the FDIC's decision

1  to pay the claim based on the Tax Payment with a receiver's

2  certificate and in accordance with FIRREA's distribution scheme,

3  he was required to seek administrative review within 60 days of

4  the FDIC's determination to allow the claim as subject to the

5  priority distribution scheme.  See MPR Global, Inc. v. FDIC, 299

6  Fed.Appx. 620, 621 (9th Cir. 2008)("MPR's predecessors

7  indisputably failed to exhaust administrative remedies by

8  neglecting to request administrative review within 60 days

9  following the FDIC's payment of the claim with a receiver's

10 certificate.  Therefore, MPR has not satisfied the jurisdictional

11 prerequisite for suit.").  As pointed out by the FDIC, the Fifth

12 Circuit Court of Appeals in McAllister v. FDIC, 87 F.3d 762, 767

13 (5th Cir. 1996) stated:

14

15        At first glance, Section 1821(d)(6) does not seem to

16        apply to situations in which the RTC approved a claim.

17        Section 1821(d)(6) provides that the 60 day period

18        begins to run on either the date upon which the RTC

19        disallows a claim, or at the end of the 180 day period

20        if the RTC took no action during the 180 day period.

21        The RTC issued the Receiver's Certificates allowing

22        plaintiffs' claims. In doing so, the RTC arguably

23        implicitly disallowed plaintiffs' claims that their

24        claims should be categorized as those of service

25        providers, rather than those of unsecured general

26        creditors. Therefore, the 60 day period in which

27

28                                - 36 -

plaintiffs could challenge the RTC's categorization of
their claims may have begun to run on the date upon
which the RTC allowed their claims as those of
unsecured general creditors.

McAllister, 87 F.3d at 762.  In McAllister, the claimants
disputed whether the Resolution Trust Corporation had properly
classified their claims as those of general unsecured creditors
rather than higher-priority "service provider claims."  Here, the
debtor is attempting to elevate his claims above the FDIC's
classification by seeking a dollar-for-dollar setoff.  Therefore,
as stated in MPR Global and McAllister, if the debtor was not
satisfied with the FDIC's determination of the Tax Payment claim,
he was required to seek administrative review.  He did not.  The
debtor has "no further rights or remedies with respect to" the
Tax Payment.  12 U.S.C. § 1832(d)(6)(B).  This includes the right
of setoff based on the Rent Claim which forms the basis of the
declaratory and injunctive relief sought in the complaint.

In a prior tentative ruling on this matter the court
employed a preemption analysis to determine that the debtor was
not permitted to assert a setoff based on the Tax Payment against
TCB because FIRREA preempted state law regarding the availability
of setoff.  Without stating any opinion as to the correctness of
that analysis, the court no longer reaches that issue, as on
further review of this matter the court has determined, for the
reasons set forth above, that the Tax Payment was satisfied in

- 37 -

full by the issuance of the receiver's certificate.  The debtor's
failure to seek administrative review of that satisfaction bars
any further rights or remedies he may have.  Under California law
"[a]n injured person is entitled to only one satisfaction of
judgment for a single harm, and full payment of a judgment by one
tortfeasor discharges all others who may be liable for the same
injury."  <u>Fletcher v. California Portland Cement Co.</u>, 99
Cal.App.3d 97, 99 (1979).

*H.  All Claims Are Dismissed Because All Are Based on the
Debtor's Setoff Argument*

     Finally, the court dismisses all claims for relief in the
complaint pursuant to Fed. R. Civ. P. 12(b)(1) because all of the
debtors' claims are based on the assertion that he may set off
amounts owed to him against amounts claimed by TCB.  As described
above, the debtor is not entitled to that setoff and his claims
to payment have either been resolved and satisfied by the FIRREA
claims process or were subject to administrative exhaustion and
were not exhausted.  The debtor's failure to administratively
exhaust his claims based on the acts or omissions of Citizens
and/or the FDIC-R leaves him with no further right or remedy with
respect to those claims.

     The court is aware of the debtor's pending motion to amend
the complaint to include claims for relief objecting to TCB's
claim in the bankruptcy case, but the basis for the objection is

- 38 -

1  a determination of the validity of TCB's liens in the debtors'
2  property and the amount of TCB's claim based on the debtor's
3  asserted setoffs.  Because the debtor is barred from asserting
4  those setoffs for the reasons set forth in this decision,
5  amendment of the complaint in that fashion would be futile.

6      The court will issue an order dismissing the adversary
7  proceeding that is consistent with this decision.

9  Dated: October 31, 2014

11                          Thomas C. Holman
                            United States Bankruptcy Judge

- 39 -

**Service List**

This document does not constitute a certificate of service. The Office of the Clerk is directed to serve the parties listed below a separate copy of the attached Order through the BNC.

William V. Prior
PO Box 416
Auburn CA 95604

Daniel L. Egan
400 Capitol Mall 22nd Fl
Sacramento CA 95814

John W. Kim
777 S. Figueroa Street, 34th Floor
Los Angeles CA 90017

Neil J. Rubenstein
55 Second Street, 17th Floor
San Francisco CA 94105

Robert S. McWhorter
621 Capitol Mall, 25th Floor
Sacramento CA 95814

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento CA 95814

George C. Hollister
655 University Ave #200
Sacramento CA 95825